MAHONING VALLEY SANITARY DISTRICT, ex rel. Betty D. MONTGOMERY, Attorney General of Ohio Plaintiff–Appellant,

v.

The GILBANE BUILDING COMPANY, Defendant–Appellee.

Nos. 01–4160, 01–4282.

United States Court of Appeals, Sixth Circuit.

Jan. 21, 2004.

Charles L. Richards, Law Office of Charles L. Richards, Warren, OH, Jim Petro, Attorney General, Arthur James Marziale, Jr., Office of the Attorney General, Columbus, OH, for Plaintiff–Appellant.

William C. Wilkinson, Paul Giorgianni, Thompson Hine, Columbus, OH, for Defendant–Appellee.

Before GUY and DAUGHTREY, Circuit Judges, and LAWSON,* District Judge.

PER CURIAM.

The Ohio Attorney General, acting on behalf of the Mahoning Valley Sanitary District, appeals the district court's grant

---

* The Hon. David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

of summary judgment to the defendant, the Gilbane Building Company. In 1992, Mahoning Valley hired Gilbane to oversee a construction project. In 1996, the state auditor investigated the agreement and concluded that Gilbane had received money to which it was not entitled. Pursuant to O.R.C. § 117.28, which allows for recovery of public money "illegally expended," the Attorney General instituted this action in an attempt to recover the funds. The district court, after declining to read "illegal" as "improper," held that the funds had not been illegally expended and granted Gilbane's motion for summary judgment. We find no error and affirm.

The Mahoning Valley Sanitary District was established to provide water to the Ohio cities of Youngstown and Niles. In 1992, Mahoning Valley officials hired Gilbane to manage its capital improvements program, which was designed to upgrade the sanitary district's aging water treatment facility. In exchange for its construction management services, Gilbane was to receive a fixed fee of $112,500 a month for 27 months. At the expiration of that contract, Mahoning Valley and Gilbane entered into a second fixed-fee contract, under which Gilbane was to receive $5,605,300 over a 48–month period. At some point during construction, the project fell behind schedule, but because the contract with Gilbane was not tied to the progress of the construction, Mahoning Valley continued to make the payments called for under its contract with Gilbane.

Eventually, however, at the request of the entity having oversight authority over Mahoning Valley's operations, the state auditor investigated the project. The auditor issued a report in August 1997, in which he concluded that Gilbane had received $385,000 for services not documented and $1,960,890 for services not provided. Additionally, the auditor found that Gilbane had received $2,308.13 for improper document reproduction and that Gilbane had improperly authorized $27,592.74 in excess of the allowable contract provisions for "change order pricing." Interpreting these receipts to constitute "illegal expenditures" to Gilbane, the Attorney General instituted this action.

In moving for summary judgment, Gilbane raised three defenses: that the investigation run by the state auditor was not an "audit" within the meaning of the statute; that the statute as applied was unconstitutional; and that the audit report did not identify any conduct that actually qualified as an "illegal expenditure of public money," as that terminology is used in the statute. The district court's analysis focused on the third defense—properly, we conclude, because the audit in question appears to be a qualified audit and because it is well-settled the constitutional question ought to be avoided if the issue can otherwise be resolved.

The threshold problem for the district court was that the Ohio Revised Code's Chapter 117 defines "public money" but not "illegal expenditures." The court also noted that "[n]either party proposes a standard for illegality." For example, the Attorney General argued in the district court and at oral argument before this court that the term "illegally expended" is a term of art understood by auditors to mean "improper," an interpretation the district court correctly noted would "violate the most basic notions of due process and prove unconstitutionally vague and subjective." Instead, the district held that "[u]nder Ohio law, in the absence of a statutory definition, words and phrases are to be given their plain, ordinary meaning" and held that "for an expenditure to be illegal, it must violate an identifiable existing law." Finding that the plaintiff had failed to meet this standard, the district court granted summary judgment in the defendant's favor. In doing so, the district

court parsed carefully through each of the instances asserted by the Attorney General as representing an illegality and found that none qualified.

Having had the benefit of oral argument, and having studied the record on appeal and the briefs of the parties, we are not persuaded that the district court erred in dismissing the complaint. Because the reasons why judgment should be entered for the defendant have been fully articulated by the district court, the issuance of a detailed opinion by this court would be duplicative and would serve no useful purpose. Accordingly, we AFFIRM the judgment of the district court upon the reasoning set out by that court in its opinion and order entered on October 17, 2001.